FeeeMAN, J.,
delivered the opinion of the Court.
John G. "Walker, of North Carolina, the plaintiff, by power of attorney dated September, 1866, appointed the defendant his agent to attend to and settle all his business in Tennessee.
In pursuance of this authority, it appears from the proof in this ease, that early in February, 1867, the defendant collected of one Shaw $2,391, paid to a son-in-law $250, as directed, leaving -a balance in his hands of $2,141, which was invested in a check, drawn by one Geo. Trotter, on New York. Trotter was a commission merchant in good standing, having unlimited credit at the time, and the confidence of all who knew him.
It appears clearly from the proof,. that there was perfect good faith on the part of the agent in all the transactions; of this there can be no doubt. It further clearly appears that he had been directed by plaintiff to send the money by express, but was advised it was safer to remit by cheek. The check it seems was dated 6th of February, but by failure of mails perhaps, or some cause, did not reach the plaintiff in North Carolina until about the 17th of April. On that day he wrote to defendant, expressing his_ gratification at his success in collecting the moneys on the 13th of April, four days before this letter was written, Trotter failed; the check was sent to New York by plaintiff, protested, and nothing was realized on it.
*427 It is insisted by defendant that the receipt of the check was a ratification of the mode of sending; _that Walker should have returned the check at once, and_ if^ he did not, he was bound by the mode of remits tance.
It further appears, however, that after the money was sent, or date of the letter, the principal wrote to agent that he had heard nothing from him on the subject of • his business, and on the 16th the agent, having learned of the failure of Trotter, wrote to principal informing him of the fact, inquiring whether the check had been received, stating. that he had sent duplicate of check to New York for collection, and asking instructions from principal what to do with the money when he, the agent, again got possession of it. He says in this letter: “ I hope to get the money in my possession again, if you have not already received it. I want you to write me and instruct me what to do with it,, this is provided you have not received ■the money/’ He then goes on to excuse his sending the check, by saying he was advised by an experienced lawyer and other friends experienced in such matters to do so.
It is certain that the agent was not authorized to send the money collected, except by express^ The rules are thus laid down for responsibility of agents by Mr. Story: “Whenever an agent violates his duties or obligations to his principal, whether it be by exceeding his authority or by positive misconduct, or by negligence or omission in the proper functions of his agency, or in any other manner, and any loss or dam *428 age thereby falls on his principal, he is responsible therefor, and bound to make full indemnity. The loss or damage need not be directly or immediately caused by the act which is done, or omitted to be done. It will be sufficient if it be fairly attributable to it, as a natural result or just consequence:” Sec. 217 e, p. 259.
It is the primary duty of an agent, whose authority is limited by instructions, to adhere faithfully to those instructions in all cases to which they ought properly to be applied. If he unnecessarily exceeds his commission or risks the property of his principal, he thereby renders himself responsible to his principal for all losses and damages which are the natural consequences of his act. And it will constitute no defense for him, that he intended the act to be a .benefit™ to the principal. Thus, when the principal directed his agent to send him $300 of $50 or $100 bills each, and the agent sent the amount in bills of $5, $10 and $20, which never reached the prinpipal, the agent was held to have deviated ♦ from his instructions and to be liable for the loss. “Indeed,” says Mr. Story, “in all such cases the question is mot whether the party has acted from good motives and without fraud, but whether he has done his duty and acted according to the confidence reposed in him:” Sec. 192 on Agency, and note 3.
The agent was clearly liable for the wrongful act of' sending by mail, and sending a check instead of money or currency.
It is earnestly insisted that the principal had rati *429 fied tbe act, and thereby estopped from recovery for this violation of duty on part of agent.
A ratification, when fairly made, will have the same effect as an ‘ original authority has to' bind the principal, not only in regard to the agent himself, but in regard to -third persons: Story on Ag., s. 244.
/ But, in order to bind the principal, the ratification' of the unauthorized act must have been made with a full knowledge of all the material facts affecting the rights of the principal; and ignorance of such facts, whether it arises from want of inquiry by the principal, and neglect to ascertain the facts, or from other causes, will render an alleged ratification ineffectual and invalid: Combs v. Scott, 12 Allen; Nixon v. Palmer, 8 New York R., 401; or as it is perhaps ’more accurately laid down in case of Seymour v. Wickoff, 10 New York R., 224. When a principal, upon full knowledge of all the circumstances of the case, deliberately ratifies the act or conduct of an agent who has exceeded his lawful authority, or assumed an unauthorized agency, the principal will be bound thereby as fully as if expressly empowered for such purpose. See 26 Wendell, 192; Owing v. Hall, 9 Peters, 629.
If, however, the material facts be either suppressed or unknown, the ratification is treated as invalid, because founded in mistake or fraud: 10 New York B., 224.
The principle that underlies all these cases is, that the party is bound by deliberate assent, made with all the facts before him necessary to form an opinion, and which would be elements in the formation of his judg *430 ment on the question of electing to treat the act done by his agent, though without or contrary to authority, ^ his own act, and adopting the same. It is the same as making a new contract, and the same elements must enter into it — that is, the assent must be given ¡with an understanding of the material facts necessary ¡to an intelligent assent to its terms, and if these are '¡suppressed or unknown, there can be no binding as-amounting to such ratification.
It will be seen from statement of facts in this case that the principal, at the time he received the check drawn by Trotter, had no knowledge of the fact that Trotter had become insolvent. The check was drawn on 6th of February, and not received by Walker in North Carolina till 17th of April afterward. Trotter had suspended on 13th of April, and John G. Walker could not have known the fact on 17th of same month. In fact, it is not pretended that he had such knowledge. He must be held bound by the act of receiving and forwarding the check to New York Tor collection, if at all. Was this act done deliberately, with a fall knowledge of all the facts necessary to formation of an intelligent judgment upon the question presented to him for decision, so as to amount to an assent to the act of his agent in sending a check instead of the money? We think not. What were the facts on which his conduct was predicated? He assumed, as a matter of course, that his ''''nephew and agent had sent him a solvent check. He had no knowledge to the contrary, nor means of knowledge. He acted alone on the facts before him, *431 and upon those facts assented to what was done. It turns- out, unfortunately, the facts were not as he assumed them to be. Shall his assent to the act be held as binding on him as if he had known all the facts of the case? If he had known the fact that f / Trotter ,was broke,1 and the check worthless at the time, and then had adopted it or retained it, he would clearly have been bound. But is not this a very' different state of facts from the real ones as presented by the case in hand? Shall the' rights of the parties be held to be the same in the one case as in the other? If the principal is to be held bound in this case, it can be on no other ground, as far as we are able to see.
Again, we must hold the party bound by the act of sending the check to New York, by the circumstances that attended the transaction at the time, and which influenced his conduct then. It must be judged by its own elements, independent of any hardship, as between the parties. If it be assumed that he contracted with the agent to receive the check instead of the money when it came to hand 17th of April, then, we reply, that such contract was not binding, because the party assented to it, believing the check was good, and not upon the fact that it was worthless. He is led into thus believing, by the act of his agentj in sending it to him; and however ignorant or inno-'i cent the agent may have been of the truth of the \ case, it operated as a fraud on his principal, if he is ' to be held bound by assent given under circumstances > of ignorance of that to which he was assenting. He *432 was misled into this temporary assent by the conduct of his agent in sending the check. Shall this • confidence be abased by the agent, to his injury, and the act sustained by the Courts? It'must be remembered, too, that the money itself was not forwarded by mail, but only an order on a third party to pay it in form of a check. ' The act of J. G. Walker in forwarding it to New York for collection, fairly interpreted, can ojily mean that he accepted it as a means of procuring his money; and if by that means he did receive' it, h*e waived the violation of his instructions. If it failed to give him his money, then he should be, and would be, required promptly to repudiate it, and notify the agent of his dissent.
This would be to give ^he natural significance to his conduct. To hold it to be an absolute ratification, is to adopt an arbitrary construction of his act, contrary to his real intention and purpose and the fair and legitimate “purport of what was done.
Again, one of two innocent parties must suffer in this case. The question is which shall it be — the one who had nothing whatever to do with producing the injury, or him by whose misconduct and violation of instructions of his principal the injury or loss has occurred? We think the latter. Where one of two innocent persons must suffer, he whose conduct produces the necessity must bear it.
This is in substance the principle of the leading case of Lickbarrow v. Mason, so often quoted and applicable to this case. In that case Lord Ashurst says: “We may lay it down as a broad, general principle, *433 that whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss, must bear itSmith’s Lead. Cases, vol. 1, part 2, 1044. Here the loss is occasioned by Trotter’s failure to pay his check or provide means to meet it when presented. Had it not been for the wrongful act of the agent in Tennessee, in purchasing the check, the injury resulting from the failure of Trotter could never have occurred. As by his own wrong he has produced this injury, in justice he ought to bear it, unless relieved from it by the deliberate and understanding act of his principal, which in this case was never done.
It is insisted, that J. G. Walker knew, when he received the check, that the money had not been sent, but the check in its stead, and therefore with this knowledge had accepted the check in lieu of the money. ■But is this the fair statement ’of the case? We think not. He accepted the check, as we have shown, upon the assumption that it was solvent. He was led so to believe by the confidence reposed in his agent, but was mistaken in this conclusion. The fact was not as he assumed or was led to believe by the conduct of his agent in sending him the check; therefore he never assented to the actual state of facts; that is, to receipt of a worthless check for his money, but really gave his assent to a different and opposite state of facts, that is, to receive the check as a solvent paper, but never as an insolvent one.
We think it may fairly be assumed as the essence of this transaction, that J. G. Walker did assent by his *434 conduct, to receive a solve®! check, as he supposed this was, or receive this che® as a solvent one; but it would do violence to the'jaBath of the case to say he agreed to receive the insojMtot check of Trotter in place of his money, as no assent to such a proposition was required or could have been given, the partyhaving no knowledge of any such state of case.
It also appears, that as soon as he found the check was not paid, he promptly complained and claimed his money. No man can say he would not have done this at once, had he known the facts at receipt of the'check. "We can not infer his assent then to receipt of a worthless check because he assented to receiving one deemed good, unless we maintain that his conduct would have been the same in either case. "We know in fact, from our knowledge of the ordinary -course of human conduct, that it would not have been the same, and his own. conduct, when the check was found to be worthless, is but in accordance with all ■experience of the action of men under like circumstances.
It will be seen from letter of agent of 16th of April, informing principal of Trotter’s failure and that he had forwarded the duplicate check to New York for collection, that he' still considered himself charged with the collection and transmission of the money, in .the event his principal had not received the money, and asks instructions as to what he should do with it if he succeeded in getting it in his possession. If it be argued that he writes this in ignorance of the fact that the principal had forwarded the check, or written *435 the letter of 17th ApiiL approving his conduct and energy in collection of Money, and therefore ought not to be held bound by^Reclarations made or acts done in ignorance of materM facts, then the same principle will equally and witl^greater force apply to conduct of his principal; for what he did was not only in ignorance of the fact that the check was worthless, but as we have shown, he was led to pursue this course most naturally, by act of agent in sending check, and by confidence reposed in him, that he would certainly not send a check on an insolvent man, as means of obtaining his money.
It is insisted that it was the duty of J. G. "Walker to make inquiry as to solvency of check before sending to New York. We think he pursued the only proper mode, or at any rate the best mode of ascertaining the fact, and having repudiated the act as soon as the insolvency was known to him, he has done all the law required of him.
We conclude, by saying that as the agent has chosen to violate his instructions and follow the advice of his friends, however honest his motives were and free of blame, he must bear the consequences of his unauthorized act, unless the principal, with a full knowledge of what the. consequences were likely to be, or at any rate all the means of knowledge at hand and in his possession, chose to waive and did waive this responsibility. This we think has not been the case here, as is clearly shown by the facts of the record.
The Circuit Judge erred in not granting a new trial. The case will be reversed and remanded.
*436 Nelson and Turkey, Js, dissented, on the ground that the only knowledge required was as to mode of sending the money and approval of that by the principal.