Peggy MARSHALL, Plaintiff-Appellant,

v.

SEVIER COUNTY, Tennessee, et al., Defendants-Appellees.

Court of Appeals of Tennessee, Eastern Section.

May 21, 1982.

Permission to Appeal Denied by Supreme Court Sept. 7, 1982.

W. Keith McCord and Sandra G. Olive, of McCord & Cockrill, P.C., Knoxville, for plaintiff-appellant.

Charlie R. Johnson, Sevierville, for defendants-appellees.

## OPINION

FRANKS, Judge.

In this action, the Clerk and Master of Sevier County sued the county to recover attorney's fees and costs expended by her in the defense of her summary removal as Clerk and Master, pursuant to *T.C.A.*, §§ 18–1–301, *et seq.* She was subsequently reinstated as clerk and master following an adjudication of no official misconduct.

The designated chancellor in the instant case concluded the county was not required to pay the fees and costs of her defense and dismissed the suit. On appeal, plaintiff insists she is entitled to recover her attorney's fees and incidental expenses under one of the following theories, *viz.,* certain statutes require the county to pay or reimburse for attorney fees under these facts; the county has established a custom of paying fees of this nature incurred by other public officials and the county maintained an errors and omissions policy with an insurance company covering these fees and expenses but negligently failed to timely file a claim with the insurance company on her behalf.

On September 1, 1976, Chancellor Earl Hendry summarily and *ex parte* entered an order suspending Clerk and Master Marshall from office and enjoining her from coming about the office or interfering with its operation. Plaintiff immediately employed counsel and demanded a hearing on the suspension. Subsequently, the chancellor directed the district attorney general to investigate the clerk and master's administration and prosecute charges of official misconduct against her. William P. God-

dard was appointed special prosecutor and, on October 14, 1976, the special prosecutor filed a petition against Clerk and Master Marshall alleging several instances of official misconduct. That case was tried before a designated judge and the plaintiff was totally vindicated on all charges of official misconduct and reinstated to her office in December, 1976. In the course of the proceeding, the clerk and master expended $9,371.00 in legal fees and expenses in defense of the suspension from office.[1]

In May, 1977, plaintiff learned Sevier County maintained an errors and omissions policy covering county officials and, on June 15, 1977, she wrote Ray L. Reagan, Sevier County Judge and Chairman of the Finance Committee, seeking reimbursement of her legal fees and expenses under the policy if she was unsuccessful in a lawsuit she had filed to recover from Chancellor Hendry and accountants hired by Hendry to investigate Ms. Marshall's office. That suit was dismissed on December 31, 1977, without any recovery upon Chancellor Hendry's agreeing to resign as chancellor. She again requested repayment from the county in September, 1978, January, 1980 and April, 1980, and filed the instant suit on April 17, 1980 to compel the county to pay her fees and expenses. On May 7, 1980, the insurance company, Midland Insurance Co., in response to a letter dated April 2, 1980, from the Sevier County Executive, advised

Sevier County that the insurance company would not pay Peggy Marshall's defense costs since the county had failed to make a claim within the time required by the policy. Midland's letter states:

[I]t is apparent that the County was aware that the plaintiff [clerk and master] intended to hold the insured [Sevier County] responsible for a Wrongful Act, and that a possible claim existed. The insured did become aware of this on or about January 25, 1977. As you can see from the above stated policy condition, the insured had one year to report this matter to the Midland Insurance Company. We did not receive first report until February 29, 1980. This is well after the one year time period.

First, plaintiff argues *T.C.A.,* §§ 8–47–121 and 8–47–122[2] establish her right to recover attorney's fees against the county. These statutes are part of what is commonly referred to as the Tennessee Ouster Law. *See Edwards v. State,* 194 Tenn. 64, 250 S.W.2d 19 (1952). While *T.C.A.,* § 8–47–102 authorizes the attorney general upon his own initiative to institute proceedings against a public official, the proceedings against Clerk and Master Marshall were instituted pursuant to *T.C.A.,* § 18–1–111. *See Goddard v. Sevier Co.,* 623 S.W.2d 917 (Tenn.1981). The plaintiff, however, is entitled to the benefit of these

---

1. Ms. Marshall's expenses are broken down as follows:

| | |
|---|---:|
| Attorney's fees | $ 7,288.50 |
| Court reporter fees | 1,508.00 |
| Telephone expenses | 300.00 |
| Automobile expense | 120.00 |
| Interest on loan obtained to finance defense | 115.00 |
| Court costs/process | 32.50 |
| Copying expense | 7.00 |
| | $ 9,371.00 |

2. *T.C.A.,* § 8–47–121. *Restoration to office—Salary during suspension.*—If, on the final hearing of the complaint or petition herein provided, the officer is not removed from office, he shall, if he has been suspended, be immediately restored to his office, and be allowed his full costs and the salary and fees of his office during the time of his suspension, as the case may

be, against the state, county, or municipality, to be taxed and paid as in other cases. Such officer so temporarily filling the office shall receive the same salary and fees as is provided by law to be paid to the officer so suspended.

*T.C.A.,* § 8–47–122. *Liability for costs.* —Such proceedings against state officers, when brought by or upon relation of the attorney general of the state, shall be at the expense of the state; when brought against county officers by or upon the relation of any of the officers above named, they shall be at the expense of the county; when brought against municipal officers by or upon the relation of the city attorney, or the district attorney general, they shall be at the expense of the municipality; and when brought by or upon the relation of citizens and freeholders, they shall be at the expense of relators; provided, that in all cases, where such proceedings are successful, full costs shall be adjudged against the defendant.

provisions since the ouster law is remedial and cumulative to the general removal provisions. *Broyles v. State,* 207 Tenn. 571, 341 S.W.2d 724 (1960).

■ Plaintiff relies on the unreported decision of *Sullivan v. State,* by the Middle Section of this court, filed August 29, 1980, as authority for her position that "full cost" may include attorney's fees. However, the court held the litigant before it was not entitled to attorney's fees. In a concurring opinion, Judge Cantrell notes from early English law and throughout the continuing development of statutory common law in this jurisdiction the words "full cost" do not include attorney's fees. *Jamieson v. Trevelyan,* 10 Exch. 748, 28 Eng.Law & Eq. 535; *Perkins v. Brown,* 135 Tenn. 140, 185 S.W. 1073 (1916). *Also see Raskind v. Raskind,* 45 Tenn.App. 583, 325 S.W.2d 617 (1959).

The rationale of the cases construing *T.C.A.,* § 20–12–101 furnishes guidance to the construction of "full cost" in *T.C.A.,* § 8–47–121. *T.C.A.,* § 20–12–101 provides:

> The successful party in all civil actions is entitled to *full costs,* unless otherwise directed by law, or by a court of record, for which judgment shall be rendered. [Emphasis added.]

We have found no cases allowing the successful party attorney's fees as an element of his full costs under this code section. As stated by the Supreme Court in *State v. Thomas,* 585 S.W.2d 606 (Tenn. 1979):

> The rule is well established in this state that in the absence of contract, statute or recognized ground of equity so providing there is no right to have attorneys' fees paid by an opposing party in civil litigation. 585 S.W.2d, at 607.

**3.** As noted in footnote 1, plaintiff attempts to recover items other than attorney's fees. However, nothing indicates these items should be treated differently. No legislative enactment exists allowing such items to be recoverable as costs and, usually, absent legislative enactment, items will not be taxable as costs. *Railroad v. Boswell,* 104 Tenn. 529, 58 S.W. 117 (1900); *Mooneys v. The State,* 10 Tenn. (2

*Also see Dyerle v. Wright Manufacturing Company,* 496 F.2d 45 (6th Cir. 1974); *Carter v. Virginia Surety Co.,* 187 Tenn. 595, 216 S.W.2d 324 (1948); *Williams v. Burg,* 77 Tenn. (9 Lea) 455 (1882). While the *Sullivan* opinion by *dicta* indicates that the award of attorney's fees under § 8–47–121 is discretionary with the trial court, there is simply no basis for authorizing an award under the statute since, historically, the term "cost" has not been interpreted to include attorney's fees nor is there any other basis to read that intent into this legislative enactment.[3]

■ Plaintiff further argues *T.C.A.,* § 8–20–107 [4] affords a basis for awarding attorney's fees; however, the chapter containing this section is inapposite to the issue before us and constitutes no authority for the allowance of plaintiff's fees.

*T.C.A.,* §§ 8–20–101, *et seq.,* authorize officials, including the clerk and master, to bring suits to compel the county to employ additional deputies and assistants for the proper operation of the office. § 8–20–107 provides:

> The cost of all cases shall be paid out of the fees of the office collected by said officers, and they and each of them shall be allowed a credit for the same in settlement with the county trustee.

This statute has been construed as giving a judge discretion to award attorney's fees to the officer suing under the chapter. *See Cunningham v. Moore County,* 604 S.W.2d 866 (Tenn.App.1980); *Jenkins, County Court Clerk v. Armstrong,* 31 Tenn.App. 33, 211 S.W.2d 908 (1947). Under this chapter, the public officer is authorized to bring suit for matters germane to the proper operation of his office. Contrastingly, under §§ 8–47–101, *et seq.,* the public officer sues to be reinstated to his office upon charge of misconduct or incompetence. The latter is

Yerg.) 578 (1831); *Person v. Fletcher,* 582 S.W.2d 765 (Tenn.App.1979).

**4.** *T.C.A.,* § 8–20–107. *Costs of Proceedings.* —The cost of all cases shall be paid out of the fees of the office collected by said officers, and they and each of them shall be allowed a credit for the same in settlement with the county trustee.

in the nature of a *quo warranto,* where the officer is not entitled to recover attorney's fees because the suit is against the officer individually and not in his official capacity. The distinguishing characteristic is well stated in *State v. Stine,* 200 Tenn. 561, 292 S.W.2d 771 (1956), quoting *American Jurisprudence:*

> "A proceeding in quo warranto against a public officer is for the purpose of determining whether he is entitled to hold the office and discharge its functions. It is not against the respondent officer in an official capacity for the purpose of establishing some official power, right, duty, or obligation attaching to the office or pertaining to the duties of a public official as such. Thus, the writ is directed to the person holding the office and exercising its functions rather than to the officer as such, ..." 292 S.W.2d, at 773.

Similarly, suits under the ouster law are directed to the individual holding the office rather than the office itself.

■ Another factor distinguishing *T.C.A.,* § 8–47–121 from § 8–20–107 is the provision in the latter statute that the costs be paid from the fees collected by the officer in the operation of his office, while reimbursement under § 8–47–121 is from the general funds of the county. The proceedings brought pursuant to §§ 8–20–101, *et seq.,* involve administering and conserving funds held as a public trust and *T.C.A.,* § 8–20–107 provides for payments from such fund. These cases fall within the well recognized exception to the rule that attorney's fees are not taxable as costs except where the attorney's fees are incurred to preserve or administer a fund which is brought before the court. *See e.g., Travelers Ins. Co. v. Williams,* 541 S.W.2d 587 (Tenn.1976); *State v. Taylor,* 199 Tenn. 507, 287 S.W.2d 83 (1955); *Gilpin et al. v. Burrage et al.,* 188 Tenn. 80, 216 S.W.2d 732 (1948); *Smith v. Haire,* 138 Tenn. 255, 197 S.W. 678 (1917); *French v. Appalachian Elec. Co-op,* 580 S.W.2d 565 (Tenn.App. 1978); *Whitsett v. City Bldg. & Loan Ass'n,* 3 Tenn.Chan.App. 526 (1877). [1]

Under *T.C.A.,* §§ 8–20–101, *et seq.,* the official sues for additional aid in performing the duties he is legally bound to perform. By a more efficient operation and performance of the duties of the office, the fund from which the costs are paid will be preserved and enhanced. Such is not the case in suits under §§ 8–47–101, *et seq.,* where the officer incurs expenses to defend against ouster from office and, as in *quo warranto* actions, the fees expended inure to the benefit of the officer as opposed to the benefit of the office. Accordingly, the rationale of the cases interpreting *T.C.A.,* § 8–20–107 affords no relief to plaintiff. [5]

■ Plaintiff also argues her legal fees are an expense of her office as provided in *T.C.A.,* § 8–22–108, which authorizes the clerk and master to pay the expenses of his office out of fees, commissions and emoluments collected by virtue of the office. The section does not define expenses but the legal fees paid in her personal defense did not inure to the benefit of the office of clerk and master. Accordingly, the legal fees incurred by the clerk and master in the

---

**5.** Plaintiff also cites the case of *Dobson v. Carter,* an unpublished opinion of this court, filed December 19, 1980. In *Dobson,* the Superintendent of the Hamilton County Department of Education sued the County School Board to enforce a state statute providing that a teacher could not be transferred without the superintendent's concurrence. The superintendent was successful and was in turn sued by the members of the school board seeking to declare the statute unconstitutional. The superintendent answered on the merits and counterclaimed for reimbursement of his attorney's fees. Judge Goddard sustained the superintendent's counter-claim, holding:

> In the present case they [the attorney's fees] are a judgment rendered upon a counterclaim premised, not on the fact that the superintendent prevailed, but rather that when suing or being sued *in his official capacity,* he has a right to be represented at public expense. [Emphasis supplied.]

This case can be distinguished from the case *sub judice* on the ground the superintendent was sued in his official capacity.

instant case are not an expense of the office reimburseable under § 8–22–108.

■ Plaintiff also asserts she is entitled to attorney's fees because Sevier County has paid attorney's fees of other county officials who have been sued. Plaintiff cites no authority for this position. The cases cited from the trial courts of Sevier County do not mandate the conclusion urged upon us by plaintiff. Significantly, Sevier County has no county attorney and hires individual attorneys on a case basis for handling the legal affairs of Sevier County and its officials. One of the cases referred to involves an award of attorney's fees to a successful plaintiff by the trial judge. In three of the cases, the officials compensated for their fees were either the county executives or members of the county commission.[6] Plaintiff's argument is without merit.

Finally, plaintiff insists she is entitled to recover because the county failed to timely file a claim under its errors and omissions policy. The failure by the county to timely report the claim is undisputed.[7] No reason is given by the county for either omitting or refusing to give notice of the claim to the insurance company. Clearly, the policy places this duty on the county. The pertinent provision states:

6. *T.C.A.*, § 5–6–112, provides in part:
The county executive shall have power:
(1) If there be no county attorney, to employ and/or retain counsel to advise *him and the members of the county legislative body* as to their legal rights as such members, ... and to represent the county either as plaintiff or defendant in such suits as may be brought by or against the county, ... [Emphasis supplied.]

7. The parties entered the following stipulations:
(1) Sevier County maintained an errors and omissions policy on all county officials, including the Clerk and Master.
(2) The Clerk and Master was not aware of said policy until April, 1977, after having expended the legal fees in question in successfully defending her suspension from office.
(3) The Clerk and Master sought reimbursement for her legal expenses under the policy as early as May, 1977, and several times thereafter, but no claim was made by the county until April, 1980.

VII. GENERAL CONDITIONS:

. . . . .

(d) *Public Entity Authorization Clause*
By acceptance of this policy, the Public Entity named in Item A of the Declarations [Sevier County] agrees to act on behalf of all Insureds [including clerk and master] with respect to the giving and receiving of notice of claim or cancellation, the payment of premiums and the receiving of any return premiums, that may become due under this policy and the Insureds agree that the Public Entity shall act on their behalf.

The plaintiff was unaware of the insurance coverage until May of 1977, and soon thereafter gave written notice to the appropriate county official of her intent to seek attorney's fees and expenses from the county. Moreover, it can be inferred that the county officials were aware of this claim from the outset of the confrontation between the chancellor and plaintiff.[8] The insurance company in denying the claim concluded that the county officials knew of the claim from January 25, 1977. In any event, the county failed to discharge its duty to plaintiff until 1980, which delay by the stipulation and the finding of the chancellor defeated recovery under the policy provisions.

(4) The insurer, Midland Insurance Company, denied coverage on the Clerk and Master's claim because the county did not notify the company of the claim within one year of receiving notice of the claim.
(5) The policy makes the county responsible for notifying the company of claims thereunder.

8. The parties stipulated: "The events surrounding plaintiff's suspension from office, until her eventual reinstatement, were so highly publicized in detail in Sevier County that the then members of the Sevier County legislative body should have known of these events." Also, on October 15, 1976, the clerk and master wrote a letter to the "Members of Finance Committee" of the Quarterly Court for Sevier County defending herself against the chancellor's charges and seeking support.

Our courts have long treated the relationship between principal and agent as fiduciary in nature and one of trust and confidence as to any matter arising from the agency relationship. An agent is under an obligation to make full and complete disclosure of facts that will benefit his principal and the relationship is treated in the same general manner and with virtually the same strictness as that of trustee and beneficiary. *Heard et al. v. Miles,* 32 Tenn.App. 410, 222 S.W.2d 848 (1949).

The nature of the relationship is well expressed in the case of *Gay & Taylor v. American Cas. Co.,* 53 Tenn.App. 120, 381 S.W.2d 304 (1963), where the court said:

It is universally recognized that an agent stands in a fiduciary relationship to his principal and is under a duty to be careful, skillful, diligent and loyal in the performance of his principal's business and that for a failure so to act he subjects himself to liability to his principal for any damages naturally and proximately flowing from the breach of duty. [Authorities omitted.] 53 Tenn.App., at 123, 381 S.W.2d 304.

The court, quoting the Supreme Court in *Walker v. Walker,* 52 Tenn. 425, 427, further stated:

"The rules are thus laid down for responsibility of agents by Mr. Story: 'Whenever an agent violates his duties or obligations to his principal, whether it be by exceeding his authority or by positive misconduct, *or by negligence or omission in the proper function of his agency,* or in any other manner, *and any loss or damage thereby falls on his principal, he is responsible therefor, and bound to make full indemnity.* The loss or damage need not be directly or immediately caused by the act which is done, or omitted to be done. It will be sufficient if it be fairly attributable to it, as the natural result or just consequence.'" [Citations omitted.]

[Emphasis supplied.] 53 Tenn.App., at 124, 381 S.W.2d 304.

Upon this principle, we hold the county liable to the extent of coverage provided in the policy had it discharged its duty as an agent and given timely notice of the claim. The policy contains a $2,500.00 deductible for each loss and provides, under the insuring clause:

[T]he Company, agrees:

1. *Insuring Clause:*

(a) With the Insureds that if, during the policy period, any claim or claims are first made against the Insureds, individually or collectively, for a Wrongful Act,[9] the Company will pay on behalf of, in accordance with the terms of this policy, the Insureds, or any of them, their Executors, Administrators or Assigns for all loss which the said Insureds, or any of them, shall become legally obligated to pay as damages.

"Loss" is defined in the policy as:

"Loss" shall mean any amount which the Insureds are legally obligated to pay, including, but not limited to, any amounts which the Public Entity may be required or permitted to pay as indemnity to an Insured, for a claim or claims made against an Insured for a Wrongful Act and shall include but not be limited to damages, judgements, settlements and costs, cost of investigation and defense of legal actions (excluding salaries of officers or employees of the Public Entity, or any other governmental body) claims or proceedings and appeals therefrom, premiums on bonds to release attachments or similar bonds but without any obligation to apply for or furnish any such bonds, provided always, however, such subject of loss shall not include fines and penalties imposed by law and any amounts due or payable under the terms of any contractual obligation.

**9.** "*Wrongful Act*" *is defined as:* "'Wrongful Act' shall mean any actual or alleged error or misstatement or act or omission or neglect or breach of duty including misfeasance, malfeasance, and non-feasance by the Insureds in the discharge of their duties with the Public Entity, individually or collectively, or any matter claimed against them solely by reason of their being or having been Insureds."

Upon the foregoing, we conclude that plaintiff is entitled to recover a judgment against the defendant for the items set forth in footnote 1, except interest on the loan and less the $2,500.00 deductible contained in the policy. We have considered the other claims advanced by plaintiff and concluded they are without merit.

The cause is remanded to the trial court for the entry of the appropriate judgment.

Costs incident to the appeal are assessed against the defendant.

PARROTT, P.J., and GODDARD, J., concur.