70 F.3d 1271
 Fed. Sec. L. Rep. P 99,002
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DEAN WITTER REYNOLDS, INC., Plaintiff-Appellee,
v.
M.C. MCCOY; Carolyn J. Scott; Lois S. Stooksbury; Nan C.
Robinson; Herman E. Collier; C. Cecil Lance; Irby C.
Lightner; Robert O. Worrell; Robert M. James; Herbert T.
Wood, Jr.; Aubrey D. Jarratt; J. Howell Peebles, Jr.;
David L. Merzbacher; Mack R. Mulkey; James T. Hatfield;
Walter C. Swanson; Wanda J. Swanson; Ronald J. Bailey,
Defendants-Appellants.
 No. 94-5779.
 United States Court of Appeals, Sixth Circuit.
 Nov. 27, 1995.
 
 Before: RYAN, BATCHELDER, and MOORE, Circuit Judges.
 BATCHELDER, Circuit Judge.
 
 
 1
 Defendants-appellants appeal from the district court's order granting plaintiff-appellee's motion for summary judgment on its complaint for declaratory relief, and granting a permanent injunction. We affirm the judgment of the district court.
 
 I.
 
 2
 Plaintiff-appellee Dean Witter Reynolds ("Dean Witter") filed this action seeking a declaratory judgment that under the Code of Arbitration Procedure of the National Association of Securities Dealers (NASD), the claims of defendants-appellants ("the Investors") were time-barred from arbitration, and also seeking a permanent injunction prohibiting the Investors from pursuing these claims any further, either in arbitration or litigation. The district court initially denied the request for injunctive relief, and on appeal this court remanded to the district court, holding that the issue of whether the claims were arbitrable under the NASD Code was not an issue for arbitration but must be decided by the district court. Dean Witter Reynolds, Inc. v. McCoy, 995 F.2d 649, 651 (6th Cir.1993). On remand, the district court held that the claims, all arising out of allegedly improper investments made on the Investors' behalf by a Dean Witter account executive, were ineligible for arbitration under the time bar of Sec. 15 of the NASD Code and could not be pursued in litigation because under the Investors' contract with Dean Witter arbitration of the claims was mandatory. The district court granted Dean Witter's motion for summary judgment and permanently enjoined the Investors from pursuing their claims either in arbitration or in litigation. Dean Witter Reynolds, Inc. v. McCoy, 853 F.Supp. 1023 (E.D.Tenn.1994). The Investors timely appealed.
 
 II.
 A. The Standard of Review
 
 3
 We review de novo both the district court's grant of summary judgment, City Mgmt. Corp. v. U.S. Chemical Co., 43 F.3d 244, 250 (6th Cir.1994), and its grant of judgment under the Declaratory Judgment Act, 28 U.S.C. Sec. 2201, Allstate Ins. Co. v. Mercier, 913 F.2d 273, 277 (6th Cir.1990). We consider five criteria when reviewing a request for a declaratory judgment: (1) whether the declaratory judgment would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata"; (4) whether use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. Id.; Allstate Ins. Co. v. Green, 825 F.2d 1061, 1063 (6th Cir.1987).
 
 B. Analysis
 
 4
 Section 15 of the NASD Code of Arbitration Procedure reads as follows:
 
 
 5
 Time Limitation on Submission. No dispute, claim or controversy shall be eligible for submission to arbitration under this Code where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim, or controversy. This section shall not extend applicable statutes of limitations, nor shall it apply to any case which is directed to arbitration by a court of competent jurisdiction.
 
 
 6
 There is no dispute that the investments complained of here were made more than six years prior to the Investors' filing of any claims in arbitration. The Investors argue, however, that their claim or cause of action did not arise until discovery of the alleged injury because the "occurrence or event" from which the six years began to run was the discovery of the injury. What the Investors refuse to acknowledge, however, is that the injury they complain of occurred when the investments were first made. Consequently, the Investors' claim arose and the six-year time limit began to run at the time the investments were made.
 
 
 7
 The Investors received prospectuses from their Dean Witter agent which clearly outlined the substantial risks of investing in limited partnerships. It is not enough for these Investors to complain that they were naive and inexperienced investors. Unless the prospectuses were misleading in some way, these Investors were on notice--at the time the investments were made--of the nature of the investments made on their behalf. The prospectuses received by the Investors were clearly worded and cannot, by any stretch, be read to be misleading, even for a novice investor.
 
 
 8
 There is no merit in the Investors' allegation that their injury did not occur until the investments turned sour. Adopting the Investors' interpretation would clearly undermine the intention of Sec. 15 calling for a six-year time limit on the arbitrability of claims, and would enable the Investors to control the running of the time limit while they reaped the benefits of the investments about which they would later complain.
 
 
 9
 The Investors also argue that Sec. 15 is subject to equitable tolling, contending that the six-year time period should be tolled if it is found that fraudulent concealment prevented discovery of the injury. We need not reach this issue at this time, however, because we hold that the Investors provided no evidence in response to the motion for summary judgment sufficient to raise a genuine issue of fact material to their claim of fraudulent concealment, and for the reasons stated by the district court, the Investors cannot prove that Dean Witter was guilty of fraudulent concealment.
 
 
 10
 The Investors raise several additional issues: (1) that Sec. 15 does not bar claims which would otherwise have been timely under the applicable state statute of limitations; (2) that the Tennessee discovery rule tolls the statute of limitations in actions for breach of fiduciary duty; and (3) that receipt of the prospectuses was not enough to trigger the six-year time limit in Sec. 15. The district court addressed each of these issues, and for the reasons stated in its opinion, we affirm the district court's ruling as to each of these issues.
 
 
 11
 Finally, we find that it was not error for the district court to enjoin the Investors from litigating their claims once the court found that arbitration was precluded. The enactment of the Federal Arbitration Act (FAA) manifested Congress' clear intent to require courts to enforce privately negotiated arbitration agreements, Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989), and it is undisputed that these Investors voluntarily entered into an arbitration agreement with Dean Witter that clearly intends for all disputes to be resolved exclusively through arbitration.
 
 II.
 
 12
 For the foregoing reasons, we AFFIRM the order of the district court.
 
 
 13
 MOORE, Circuit Judge, dissenting.
 
 
 14
 There are two critical issues in this case: First, have the Investors met their burden of producing evidence of fraudulent concealment by Dean Witter sufficient to withstand summary judgment? Second, does the equitable tolling doctrine apply to permit resolution of claims filed more than six years after the investment in unsuitable securities? Because I believe that the Investors did produce evidence of fraudulent concealment sufficient to demonstrate a genuine issue of material fact, and that the doctrine of equitable tolling does apply, I would reverse the district court's grant of summary judgment and remand to the district court with directions to apply the doctrine of equitable tolling as appropriate to the circumstances found in each individual case.
 
 I.
 
 15
 I disagree with the majority only on one issue: I believe that the evidence before the district court on the summary judgment motion, when viewed in the light most favorable to the Investors, giving them the benefit of all reasonable inferences to be drawn therefrom, see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), was sufficient to establish the existence of a genuine issue of fact material to the claims of fraudulent concealment.
 
 
 16
 To toll a limitations period for fraudulent concealment under Tennessee law, one generally "must prove that the [other party] took affirmative action to conceal his cause of action and that [one] could not have discovered [one's] cause of action despite exercising reasonable diligence." Vance v. Schulder, 547 S.W.2d 927, 930 (Tenn.1977). The affirmative action requirement, however, is relaxed where a confidential or fiduciary relationship exists between the parties; in such instances there is a duty to disclose, and mere silence may constitute fraudulent concealment. Benton v. Snyder, 825 S.W.2d 409, 414 (Tenn.1992); Clark v. American Nat'l Bank and Trust, 531 S.W.2d 563, 569 (Tenn.Ct.App.1974), cert. denied, 423 U.S. 1053 (1976). In Tennessee, the relationship between agent and principal is clearly subject to such a duty to disclose. Marshall v. Sevier County, 639 S.W.2d 440, 446 (Tenn.Ct.App.1982); Heard v. Miles, 222 S.W.2d 848, 851-52 (Tenn.Ct.App.1949).
 
 
 17
 Dean Witter and the district court concentrate on the second element of fraudulent concealment, asserting that the prospectuses that the Investors received fully described the limited partnerships, and that the exercise of reasonable diligence would therefore have revealed their unsuitability. The majority opinion also adopts this view, seemingly approving a per se rule that "[u]nless the prospectuses were misleading in some way," investors are on notice of their cause of action from the time of the prospectuses' delivery.
 
 
 18
 There are several problems with this holding. First, when a confidential or fiduciary relationship exists, some jurisdictions relax the requirement that a claimant exercise due diligence to discovery fraud. See, e.g., Hobbs v. Bateman Eichler, Hill Richards, Inc., 210 Cal.Rptr. 387, 404 (Ct.App.1985); Lucas v. Abbott, 601 P.2d 1376, 1379 (Colo.1979); Prueter v. Bork, 435 N.E.2d 109, 113 (Ill.App.Ct.1981); Boone v. Bonzalez, 550 S.W.2d 571, 573-74 (Ky.Ct.App.1977); cf. Teamsters Local 282 Pension Trust Fund v. Angelos, 762 F.2d 522, 528 (7th Cir.1985) (holding that under federal securities law the imposition of a duty to disclose removes the investor's obligation to investigate). Tennessee has not addressed this issue.
 
 
 19
 Second, the prospectuses in the record are not in fact clear and comprehensive. They do disclose the illiquidity of the investments, and to that extent might be viewed as giving the Investors notice of one aspect of unsuitability. However, only three of the Investors here explicitly listed liquidity as one of their general investment requirements. Six of them never mentioned it in any context. Eleven mentioned liquidity only when it became apparent that a particular investment lacked it, and over half of those made it clear that safety and protection of principal were their overriding concerns. Only two of the Investors specifically expressed concern about the liquidity of limited partnerships--and Dean Witter then assured them that their funds could be easily withdrawn.
 
 
 20
 The majority of Investors stated that their primary goals were preservation of principal and provision of a steady income stream. The prospectuses were not sufficient on their face to warn the Investors of the risks of dramatic erosion of principal or virtual cessation of income. For example, some of the prospectuses stated that the objectives of the investment were preservation of capital and regular cash distribution, as well as capital growth. See, e.g., JMB Mortgage Partners, Ltd. Prospectus. The inclusion in the prospectus of a statement that there is "no assurance that these objectives will be attained" and the inclusion of descriptions of various risks of the business are not a sufficient basis to establish a per se rule that the Investors are on notice of the unsuitability of their investment. A reasonable investor, seeing that the explicitly stated objectives of the investment are his or her own objectives of preservation of capital and provision of a steady income stream, would not expect that the subsequent descriptions of risks, which after all are faced in many business ventures, would automatically make the investment unfit for his or her objectives. The Investors here should be given the opportunity to make their case for fraudulent concealment, and should not be barred by a per se rule that disclosure in the prospectus of general risks of the investment automatically shows their unsuitability for these investors.
 
 
 21
 Dean Witter's assurances raise the third and most important problem with the outcome of this case. The Investors did not simply receive some prospectuses in the mail, ask Dean Witter to invest in a few ventures on their behalf, and then cry "foul" when the investments predictably turned sour. Viewed in the light most favorable to the Investors, the record here can be read as suggesting affirmative misconduct and culpable silence on Dean Witter's part. The pleadings and affidavits describe unsophisticated retirees who individually met with Dean Witter agent Jeffrey Hayden (usually at his initiative), told him of their investment goals, received assurances that these goals could and would be met, allowed him to invest or direct the investment of their money, and for years received periodic payments and account statements showing that the investments were holding their value.
 
 
 22
 Suddenly, sometimes in the space of just one month, the Investors saw their retirement savings disappear. Hayden's promise that he could produce a twenty percent return with as much safety as if the Investor "owned the bank" turns out to have been, to put it kindly, a gross exaggeration, and his characterization of limited partnerships as "extremely safe and liquid" was clearly capricious. The affidavit of an independent investment counselor suggests that, in the absence of a public market for the partnership interests, the "value" listed on the periodic statements was at best an unsubstantiated, unverifiable estimate and at worst a means of intentionally concealing the decline in the venture's prospects.
 
 
 23
 Given the facts of this case, viewed in a light favoring the Investors, then, the court cannot narrowly focus on the sole issue of whether the prospectuses were misleading. The real issue is whether reliance on Dean Witter's representations was reasonable in light of all the information available. Courts routinely look at this broader context when determining the reasonableness of an investor's reliance on a broker's representations. When evaluating claims of federal securities fraud, for instance, courts consider (1) the investor's sophistication and expertise in financial and securities matters, (2) the existence of longstanding business or personal relationships between the parties, (3) the availability of the relevant information, (4) the existence of a fiduciary relationship, (5) the concealment of the fraud, (6) the opportunity to discover the fraud, (7) which party initiated the transaction, and (8) the specificity of the misrepresentations. See, e.g., Brown v. E.F. Hutton Group, Inc., 991 F.2d 1020, 1032 (2d Cir.1993); Myers v. Finkle, 950 F.2d 165, 167-69 (4th Cir.1991); Bruschi v. Brown, 876 F.2d 1526, 1529 (11th Cir.1989); Kennedy v. Josephthal & Co., 814 F.2d 798, 804 (1st Cir.1987); Zobrist v. Coal-X, Inc., 708 F.2d 1511, 1516-18 (10th Cir.1983) (first case to aggregate these factors); Arioli v. Prudential-Bache Securities, 792 F.Supp. 1050, 1060 (E.D.Mich.1992); cf. Molecular Technology Corp. v. Valentine, 925 F.2d 910, 918-19 (6th Cir.1991) (applying these factors in determining that reliance on fraudulent private placement circular was not reckless and that investors could therefore recover under federal securities law). No single factor, including the delivery of a prospectus with warnings, is absolutely dispositive. See, e.g., Bruschi, 876 F.2d at 1529; Zobrist, 708 F.2d at 1516-17.
 
 
 24
 In conclusion, this court should not sanction a wholesale dismissal of all the Investors' claims simply because of the delivery of prospectuses. Doing so invites unscrupulous brokers to make oral misrepresentations about an investment, secure in the knowledge that the mere provision of a prospectus will immunize them from any negative repercussions. Without a detailed examination of the individual facts, we should not penalize the unsophisticated investor for relying on a seemingly trustworthy agent from a nationally known, reputable firm, bound by law to favor the investor's interests above his or her own.
 
 
 25
 As a federal district court has noted when confronted with a similar case,
 
 
 26
 [w]hile it is always a temptation for overburdened courts to treat issues as questions of law rather than fact so that they may be more easily decided, and the temptation is especially strong when doing so would dispose of troublesome cases or claims, mere judicial economy cannot justify the adoption of mechanistic rules that disserve the policies underlying laws....
 
 
 27
 Luksch v. Latham, 675 F.Supp. 1198, 1203 (N.D.Cal.1987). Because of the number and complexity of the claims at issue, this is clearly a "troublesome" case. This diversity of facts, however, is precisely the reason that summary judgment was inappropriate. The Investors have met their burden in opposing Dean Witter's motion for summary judgment by showing that there are genuine issues of material fact concerning whether the unsuitable nature of the investments was fraudulently concealed. I would therefore reverse the district court's grant of summary judgment. On remand, I would direct the district court to hold a factual hearing to determine which claims were in fact fraudulently concealed, applying the equitable tolling doctrine, and to order arbitration of such claims, if any.
 
 II.
 
 28
 Dean Witter argues that section 15 of the NASD Code of Arbitration Procedure, which was incorporated into the parties' agreement by reference and subsequent stipulation, amounts to a flat eligibility rule precluding arbitration of claims more than six years old, regardless of whether they would normally be subject to equitable tolling for fraudulent concealment. The arbitration contract in this case, however, does not indicate that the parties agreed to waive their right to employ the equitable tolling doctrine. I therefore believe that the district court should allow equitable tolling of section 15 and should compel arbitration of claims that were fraudulently concealed.
 
 
 29
 The Third and Seventh Circuits have held that section 15 is not subject to equitable tolling and that claims more than six years old can therefore not be heard by an arbitrator. PaineWebber Inc. v. Hofmann, 984 F.2d 1372, 1381-82 (3d Cir.1993); Edward D. Jones & Co. v. Sorrells, 957 F.2d 509, 512-13 (7th Cir.1992). However, as a recent journal article points out, no court has explained why the six-year eligibility period for arbitration cannot be tolled just like a classic statute of limitations. Quinton F. Seamons, Does Securities Arbitration Go On Forever? Eligibility and Statutes of Limitation, Insights: The Corporate & Securities Law Advisor, May 1994, at 17, 22 n. 14. If the parties agreed that the time limitation could be tolled, that intent should be effected, regardless of whether the court or the arbitrator is deciding the issue and regardless of whether section 15 is characterized as a substantive eligibility requirement or a procedural statute of limitations. See First Options of Chicago, Inc. v. Kaplan, 115 S.Ct. 1920, 1924 (1995) (holding that state contract law applies in deciding whether parties agreed to arbitrate a certain matter, including arbitrability); Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S.Ct. 1212, 1216 (1995) (looking to agreement's terms in determining arbitrability of claim).
 
 
 30
 The intent of the signatories here can be derived from the language of the arbitration provision: "Any controversy between DWR and [the Investors] arising out of or relating to this contract or the breach thereof, shall be settled by arbitration.... [T]he award of the arbitrators ... shall be final, and judgment upon the award rendered may be entered in any court, state or federal, having jurisdiction." Dean Witter Reynolds, Inc. v. McCoy, 853 F.Supp. 1023, 1027 (E.D.Tenn.1994) [hereinafter McCoy II ]. This is clearly a choice-of-forum clause, evidencing the parties' intent to replace the courts with a more efficient means of dispute resolution. It does not indicate any waiver of substantive rights.[1]
 
 
 31
 If we were to agree with Dean Witter and hold that section 15 is not subject to equitable tolling, however, we would be denying the Investors a substantive right to relief that would otherwise be available. Before signing the agreement, the Investors had the right to pursue "stale" claims if they could prove fraudulent concealment. See Vance v. Schulder, 547 S.W.2d 927, 930 (Tenn.1977). Denying them access to the fraudulent concealment doctrine would be holding that, by signing the agreement, they waived their right to arbitrate any claim filed more than six years after the alleged injury--regardless of the reason for the delay in filing.
 
 
 32
 Such a ruling would be appropriate if the arbitration agreement indicated such a waiver. A party to a contract is free to relinquish substantive rights. See, e.g., K.M.C. Co. v. Irving Trust Co., 757 F.2d 752, 756 (6th Cir.1985) (holding that contractual waiver of right to jury trial in civil case must be "knowing and voluntary"). However, the contract at issue here evidences no relinquishment of the right to employ the equitable tolling doctrine. There is no indication that either Dean Witter or the Investors intended to forego their right to take advantage of state limitations law. See Mastrobuono v. Shearson Lehman Hutton, Inc., 115 S.Ct. 1212, 1219 (1995) (refusing to read arbitration agreement as a waiver of substantive right absent indication that investors realized that agreement was such a waiver).
 
 
 33
 Sixth Circuit case law supports the conclusion that the equitable tolling doctrine should apply to section 15's six-year filing period for arbitration. In Roney and Co. v. Kassab, 981 F.2d 894, 899-900 (6th Cir.1992), we examined claims of wrongdoing on the part of an investment adviser, and held that Rule 603 of the New York Stock Exchange Code of Arbitration barred from arbitration any dispute originating outside the Rule's six-year eligibility period.[2] Before enjoining arbitration of disputes that had clearly arisen more than six years before filing, however, the Roney court examined whether the investors had stated a valid claim of fraudulent concealment. Id. at 900. Only after finding that fraudulent concealment had not occurred did the court enjoin arbitration. Id. at 900-01. In addition to Roney, a recent unpublished decision noted that under section 15 "if there is adequate proof of fraudulent concealment, the [investors'] claims more than six-years-old may still be pursued in arbitration," even though the investors' original arbitration claims clearly did not allege fraudulent concealment as an independent injury. Securities Serv. Network, Inc. v. Cromwell, No. 94-5778, 1995 WL 456374, at * 3-4 (6th Cir. Aug. 1) (per curiam) (unpublished disposition).
 
 
 34
 In this very case, a prior panel of this court concluded that "section 15 is not akin to a statute of repose; should the District Court find, applying the relevant state law, that Dean Witter or its agents succeeded in fraudulently concealing their alleged wrongs, then the claims potentially may still be pursued in arbitration." Dean Witter Reynolds, Inc. v. McCoy, 995 F.2d 649, 651 (6th Cir.1993) [hereinafter McCoy I ]. This directive on remand to the district court clearly asserts section 15's amenability to tolling. One district court in the Sixth Circuit has already read McCoy I as mandating tolling of section 15. See Davis v. Keyes, 859 F.Supp. 290, 292-93 (E.D.Mich.1994). This court should follow our precedent and remand this case to the district court for application of the equitable tolling doctrine where appropriate.
 
 B.
 
 35
 There is one way that we could follow the Third and Seventh Circuits without implying a waiver of substantive rights into the arbitration agreement. Unlike the district court here, neither of our sister circuits foreclosed the possibility that the "stale" claims could be heard in court. See PaineWebber Inc. v. Hofmann, 984 F.2d 1372, 1381 (3d Cir.1993) (endorsing injunction of arbitration only); Edward D. Jones & Co. v. Sorrells, 957 F.2d 509, 514 (7th Cir.1992) (affirming vacation of arbitral award). In fact, some experts in the field of securities arbitration, including the drafters of recently proposed amendments to section 15, agree with Hofmann and Sorrells that section 15 may not be tolled, but would allow investors with legitimate tolling arguments to bring their claims in court. See Notice of Filing of Amended Proposed Rule Change, Exchange Act Release No. 34-34442 (July 26, 1994), 1994 WL 398693, at * 3, available in LEXIS, Fedsec Library, Secrel File, at * 20 ("[A] determination that a claim is ineligible will not ... bar a claimant from bringing the substantive claim before a judicial forum...."); New York Stock Exchange, Inc. Symposium on Arbitration in the Securities Industry, Eligibility (Six-Year) Rule, 63 Fordham L.Rev. 1495, 1541 (1995) (remarks of Kenneth Meister, Senior Counsel at Prudential Securities) ("My view would be that if you are not eligible to go into arbitration, then you can take your shot in court."), 1546-47 (remarks of Richard Ryder, Publisher of Securities Arbitration Commentator ) (opposing tolling of six-year period but advocating claimant's right "to go into court" and "meet his statute of limitations questions there").
 
 
 36
 As shown above, the language of the contract in this case makes it clear that the parties intended to arbitrate all their disputes. I mention the possibility of adjudication only because it would be a preferable result to the one reached by the district court below, which held that the Investors could not pursue their tolling claims in any forum. To send the parties to court instead of arbitration would be contrary to the contract's terms, but foreclosure of all fora would be an even greater departure from the parties' intent.
 
 
 37
 In conclusion, unless there is a clear indication to the contrary, an agreement that provides for arbitration in place of adjudication should not be read to deprive claimants of substantive rights that would be available to them in the absence of such an agreement. The parties to the arbitration agreement here were simply seeking a more efficient means of administering the law. There is no reason to imply a waiver of their right to the application of the equitable tolling doctrine. I would therefore allow equitable tolling of section 15 in any instance in which the Investors can prove fraudulent concealment.
 
 
 
 [1]
 In the context of federal securities law, the Supreme Court has sanctioned the use of adhesion arbitration contracts only because it views them purely as choice-of-forum agreements. See Rodriguez de Quijas v. Shearson/American Express Inc., 490 U.S. 477, 483 (1989) (enforcing arbitration agreement in standard customer agreement between broker and investor only after finding that arbitral forum would not deny investor rights to which he was entitled); Shearson/American Express Inc. v. McMahon, 482 U.S. 220, 232 (1987) (approving waiver of judicial forum only after concluding that "the streamlined procedures of arbitration do not entail any consequential reduction on substantive rights"); cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forego the substantive rights afforded by the statute....")
 
 
 [2]
 Section 15 of the NASD Code is identical to Roney 's Rule 603, so Roney is a fitting model for resolution of this case. See Dean Witter Reynolds, Inc. v. McCoy, 995 F.2d 649, 651 (6th Cir.1993)